**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FIRST AUTOMOTIVE SERVICE
CORPORATION, N.M., etc., et al.,

        Plaintiffs,

vs.                                  Case No. 3:07-cv-682-J-32TEM

FIRST COLONIAL INSURANCE COMPANY,
etc., et al.,

        Defendants.

_____

**ORDER**[1]

    This matter comes before the Court on Plaintiffs' Motion To Remand.  (Doc. 14.)  The Court has considered the motion and supplemental authority (Doc. 21), as well as defendants' response.  (Doc. 23.)

**I.**    **Background**

    Plaintiff First Automotive Service Corporation, N.M., ("FASC"), a new Mexico corporation, insures extended vehicle service contracts marketed by non-party company Mechanical Breakdown Protection, Inc. ("MBPI") to automobile dealers and vehicle owners.  (Doc. 2 at 1-3 (Complaint ¶¶ 3, 5, 11).)  FASC is the obligor under

_____

    [1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

the MBPI vehicle service contracts, which means that it obligates itself to satisfy valid investigated claims presented to it by MBPI.  (Id. ¶ 10.)   Plaintiff First Automotive Insurance Risk Retention Group, Inc. ("FAIRR"), a Hawaii corporation, insures FASC. (Id. ¶ 3, 4, 10).)

Defendant Northbrook Indemnity Company ("Northbrook"), is an Illinois corporation with offices in Jacksonville, Florida, and Defendant First Colonial Insurance Company ("First Colonial") is a Florida corporation with its principal place of business in Jacksonville.  (Complaint ¶¶ 6, 7; Docs. 1 at 4 (Notice of Removal ¶¶ 13, 14); 6 at 2 (Answer ¶ 7).) The complaint alleges that both Northbrook and First Colonial are reinsurers of the MBPI service contracts, citing to four attached placement slips.  (Complaint ¶ 9.)  The placement slips are signed by an officer of FAIRR as "insurer," and by the "Vice President, First Colonial Insurance Company as agent of Northbrook Indemnity Company" or by the "President, First Colonial Insurance Company as Manager for Northbrook Indemnity Company credit insurance," as "reinsurer."  (Doc. 2 at 7-10 (Complaint Ex. A).)  FAIRR paid $2 million in premiums for the reinsurance over approximately four years.  (Complaint ¶ 13.)

Defendants contend that First Colonial, a Florida corporation, acts as agent for Northbrook.  (Docs. 6 at 2; 7 at 2 (Answers ¶ 6); see Complaint ¶ 6.)  First Colonial and Northbrook are both subsidiaries of The Allstate Corporation, and under the National Association of Insurance Commissioners (NAIC) Holding Company System,

2

both First Colonial and Northbrook are listed under the "Allstate Insurance Group." (Answers ¶ 8).)  In a corporate disclosure statement filed with the Court, defendants state that Northbrook is a wholly owned subsidiary of the Allstate Insurance Company which in turn is a subsidiary of parent company The Allstate Corporation.  First Colonial is a wholly owned subsidiary of American Heritage Life Investment Company, a subsidiary of American Heritage Life Investment Corporation, which in turn is a subsidiary of The Allstate Corporation.  (Doc. 10.)

The complaint alleges that "Allstate ["Allstate Insurance Group of companies"], on behalf of Defendants, announced to MBPI clients and agents and prospective clients and agents . . . that it had entered into a reinsurance agreement with FAIR and FASC to reinsure the MBPI vehicle service contract program." (Complaint ¶ 16.)  The complaint cites to an undated correspondence sent by the vice president of an entity called Allstate Financial Workplace Division regarding First Automotive and the MBPI service contract program, which states:

> We are pleased to inform you that Allstate Financial Workplace Division have [sic] entered into a Reinsurance Agreement with First Automotive Insurance Risk Retention Group, Inc. and First Automotive Service Corp. to reinsure the Mechanical Breakdown Protection, Inc. (MBPI) Vehicle Service Contract program.
>
> This program is being administered by Mechanical Breakdown Protection, Inc. and insured through First Automotive.  Allstate Financial has had a ten-year business relationship with the First Automotive affiliated companies.

3

> Allstate Financial Workplace Division encompasses American Heritage Life Insurance Company, First Colonial Insurance Company and Northbrook Indemnity Company .
> . . .

(Doc. 2 at 11 (Complaint Ex. B).)

Plaintiffs allege "[t]he loss reserves relating to the MBPI/FASC vehicle service contract program have been exhausted" and that FAIRR made a written demand "to Defendants" for payment of its claim, which it alleges exceeds $10 million. (Complaint ¶¶ 17, 18.)  The April 3, 2007 Notice of Loss cited and attached to the complaint is signed by the president of FAIRR and is addressed to the president of Northbrook Indemnity Company.  It requests

> payment relating to reinsurance provided by Northbrook Indemnity Company to FAIR, the ceding Insurer, and its Insured, FASC, as outlined in the enclosed placement slips whereby Northbrook Indemnity provides coverage . . . .

(Doc. 2 at 12 (Complaint Ex. C).)  Northbrook disputes that the loss reserves were exhausted for 2001 through 2004, and contends all claims under the vehicle service contract from 2001 through 2004 have been paid.  (Doc. 8 at 10 (Counterclaim ¶¶ 48-50).)

FAIRR and FASC filed this lawsuit in state court on June 20, 2007 seeking a declaratory judgment concerning defendants' alleged obligations under the four placement slips.   Northbrook conditionally counterclaimed that the disputed agreement is comprised of nine placement slips and an Aggregate Excess of Loss

4

Reinsurance Agreement ("Reinsurance Aagreement") that it contends was "in place before and after the execution of the placement slips," and seeks a declaration of the parties' rights under both.   (Doc. 8 at 2, 10-11, 20 (Counterclaim and Ex. 2); )[2] Northbrook removed the action to this Court on July 26, 2007, on the basis of diversity jurisdiction, contending that First Colonial, a Florida corporation, had been fraudulently joined to defeat diversity. (Doc. 1.) Northbrook argues that First Colonial, as "agent" and "manager" of Northbrook, is not a proper party in this lawsuit.  In their motion to remand, plaintiffs argue that the parties were properly named, and because the parties are not completely diverse, the Court lacks subject matter jurisdiction.

## II.   Discussion

### A.   Law Of Fraudulent Joinder

A defendant may remove a civil case from state to federal court if the federal court has original jurisdiction.   28 U.S.C. §1441(a).   For a federal court to have original diversity jurisdiction over a case alleging only state law claims, as here, there must be complete diversity and the threshold amount in controversy (which is not in dispute).   28 U.S.C. §1332(a).

Section 1441(b) bars removal on the basis of diversity if any party in interest

---

[2]   Northbrook characterizes its counterclaim as "conditional" upon the Court's decision in the case <u>Northbrook Indemnity Co. v. First Automotive Service Corp., N.M., et al.</u>, No. 3:07-cv-683-J-32JRK (M.D. Fla.) currently pending before this Court. (Doc. 8 at 1.)   In that case, Northbrook seeks to compel arbitration of the parties' dispute under the Aggregate Excess of Loss Reinsurance Agreement.

properly joined and served as a defendant is a citizen of the State in which the action is brought.  Lincoln Property Co. v. Roche, 546 U.S. 81, 90 (2005); 28 U.S.C. § 1441. "'When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed.'"  Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir. 2007)(citation omitted).  However, the fraudulent joinder doctrine provides an exception to the citizenship requirement of removal jurisdiction.  Tran v. Waste Mgmt., Inc., 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).  A plaintiff cannot defeat removal by joining a resident defendant having no real connection with the controversy.  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).  If a defendant is fraudulently joined, its citizenship is not considered in determining whether complete diversity exists.  Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).

By alleging fraudulent joinder, Northbrook, as the removing party, has the burden of proving that there is no possibility the plaintiff can establish a cause of action against the resident defendant First Colonial in state court.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 & n.4 (11th Cir. 1998); Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); Accordino v. Wal-Mart Stores, East, L.P., No.

6

3:05CV761J32MCR, 2005 WL 3336503, at *2 (M.D. Fla. Dec. 8, 2005).[3] Defendant's

burden is "a heavy one." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th

Cir. 1998).  "[T]he district court must evaluate the factual allegations in the light most

favorable to the plaintiff and must resolve any uncertainties about state substantive

law in favor of the plaintiff. . . .[Citation omitted.]   The federal court makes these

determinations based on the plaintiff's pleadings at the time of removal; but the court

may consider affidavits and deposition transcripts submitted by the parties." Crowe,

113 F.3d at 1538; see also Accordino, 2005 WL 3336503, at *3.  However, the court

resolves factual controversies in favor of the plaintiff "only when there is an actual

controversy, that is, when both parties have submitted evidence of contradictory

facts." Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005)(internal citation and

emphasis omitted).  In resolving a claim of fraudulent joinder, the court will proceed

in a fashion "similar to that used for ruling on a motion for summary judgment under

Fed. R. Civ. P. 56(b)." Tran, 290 F. Supp. 2d at 1293 (quoting Crowe, 113 F.3d at

1538).      However, this "jurisdictional inquiry must not subsume substantive

determination," and the court's authority to look into the ultimate merits of the

plaintiffs' claims "'must be limited to checking for obviously fraudulent or frivolous

claims.'" Tran, 290 F. Supp.2d at 1293 (quoting Crowe, 113 F.3d at 1542)(emphasis

---

[3]    There are a few other ways to prove fraudulent joinder, see Triggs, 154 F.3d
at 1287, but they are irrelevant here.

omitted).

If a defendant can demonstrate that "'there is no possibility the plaintiff can establish a cause of action against the resident defendant,'" then the plaintiff is said to have fraudulently joined the non-diverse defendant.  <u>Florence</u>, 484 F.3d at 1297 (citation omitted)  "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."  <u>Florence</u>, 484 F.3d at 1299.

In their motion to remand, plaintiffs focus upon the four placement slips attached to their complaint, contending they are "distinct, separate and unrelated" from the Reinsurance Agreement, having "completely different limits, retention and terms".  (Doc. 14 at 6-8.)[4]  Further, while the placement slips characterize First Colonial as a "manager" and "agent" of Northbrook, the reinsurer, plaintiffs contend that "First Colonial's role in the issuance of the Placement Slips is unclear at best."

_____

[4]   Defendant Northbrook argues that the four placement slips appended to plaintiffs' complaint do not represent the parties' relationship, which it contends is governed by an Aggregate Excess of Loss Reinsurance Agreement and additional placement slips between FAIRR and Northbrook.  (Doc. 1 at 3.)  Because plaintiffs' motion to remand is determined based on plaintiffs' pleadings at the time of removal, the Court need not make this substantive determination of which agreement or agreements govern the dispute at this stage of the litigation, saving it for another day.

8

(Doc. 14 at 8.)[5]

## B.   Plaintiffs' Declaratory Judgment Action

Plaintiffs argue in favor of remand, contending that First Colonial is a proper party in this declaratory judgment action because "[p]laintiffs are seeking a declaration of Defendant Northbrook *and* Defendant First Colonial's reinsurance coverage obligations under the Placement Slips attached to Plaintiffs' Complaint" as Exhibit A. (Doc. 14 at 5 (emphasis in original).)   Plaintiffs brought this action in state court pursuant to the Florida statutes governing declaratory judgments.[6]   (Complaint ¶ 1 (citing Fla. Stat. § 86.011, et seq.).)   Under Chapter 86, "[a]ny person claiming to be interested or who may be in doubt about his or her rights" under a contract . . . "may have determined any question of construction or validity . . . and obtain a declaration

---

[5]   Plaintiffs attach as an exhibit a "Joint Marketing Agreement" dated March 1, 2001 between First Colonial Agency, Inc. ("FCA") and Risk Services, LLC, in which FCA "has been appointed to represent Northbrook Indemnity Company through its reinsurer, First Colonial Insurance Company, (FCA being under common ownership with Northbrook Indemnity Company and First Colonial Insurance Company,) . . . ." (Doc. 14-2 at 1.)  Northbrook responds that the joint marketing agreement "merely states that First Colonial and Northbrook jointly own a third entity, First Colonial Agency" and that it is not related to the instant dispute.  (Doc. 23 at 10.)  The relevance of the Joint Marketing Agreement to the four placement slips attached to the complaint is not apparent.

[6]   While after removal, the question of joinder is one of federal law, <u>see</u> <u>Provident Tradesmens Bank & Trust Co. v. Patterson</u>, 390 U.S. 102, 125 n.22 (1968), and Fed. R. Civ. P. 19 governs the determination, Florida law is relevant to the extent that it defines the legal interest that First Colonial actually has in this action.

of rights, status, or other equitable or legal relations thereunder." Fla. Stat. § 86.021.

"When declaratory relief is sought, all persons may be made parties who have or claim any interest which would be affected by the declaration."  Fla. Stat. § 86.091. The purpose of the declaratory judgment chapter "is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed."  Fla. Stat. § 86.101.  "It is essential that the defendant in a declaratory judgment action be the party or parties whose interest will be affected by the decree."  Jacobs & Goodman, P.A. v. McLin, Burnsed, Morrison, Johnson & Robuck, P.A., 582 So.2d 98, 100 (Fla. 5th DCA 1991). Parties to a declaratory judgment action must "have or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law."  Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400, 404 (Fla. 1996).

### 1.    First Colonial As Agent

Under Florida law, an authorized agent acting for a disclosed principal, in the absence of circumstances showing that personal responsibility was intended to be incurred, may not be held personally liable to the other contracting party. Richard Bertram, Inc. v. Sterling Bank & Trust, 820 So.2d 963, 965 (Fla. 4th DCA 2002).  "It is generally recognized that an agent acting within the course and scope of its agency relationship with a disclosed principal is not liable for the debts or obligations of the

principal arising from contracts which the agent may negotiate or execute on behalf of such disclosed principal." Sussman v. First Fin. Title Co. Of Fla., 793 So.2d 1066, 1068 (Fla. 4th DCA 2001).  "If the contracting party knows the identity of the principal, the principal is deemed disclosed." Philip Schwartz, Inc. v. Gold Coast Graphics, Inc., 623 So.2d 819, 820 (Fla. 4th DCA 1993).

Moreover, an agent for a disclosed insurer is not liable to the insured on the insurance contract, see Griggs v. State Farm Lloyds, 181 F.3d 694, 702 (5th Cir. 1999); Bullock v. United Benefit Ins. Co., 165 F. Supp.2d 1255, 1257 (M.D. Ala. 2001)(denying remand after finding insurance agent was fraudulently joined to defeat diversity jurisdiction), and is not an indispensable party in an action for declaratory judgment on the coverage issue.  Marion v. Gen. Amer. Life Ins. Co., No. 2:06-cv-219-FtM-29SPC, 2007 WL 430735, at *2 (M.D. Fla. Feb. 5, 2007)(citing McKay v. State Farm Fire and Cas. Co., 731 So.2d 852, 855 (Fla. 4th DCA 1999)).

While the Court recognizes that the relationship between Northbrook and First Colonial "is not controlled by the descriptive labels employed by the parties themselves," Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993), plaintiffs provide no basis for the Court to find that First Colonial acted as other than agent for Northbrook as it pertains to the placement slips.  (Doc. 2 at 7.)  There was no express agreement alleged or established by evidence that First Colonial would be personally liable to FAIRR and FASC as a reinsurer.  See Richard Bertram,

11

<u>Inc.</u>, 820 So.2d at 965 ("'[i]n  the absence of other facts, the inference is that the principal is, and the agent is not, a party'" to the contract)(quoting Restatement (Second) of Agency § 320 cmt. a (1958)).[7] Nor was there any allegation or evidence that First Colonial breached a duty to plaintiffs, contractually or tortiuously.  First Colonial, as agent to insurer Northbrook, is not a proper party in plaintiffs' declaratory judgment action brought on this contract because as agent it is not a party to the contract between the insured and the insurer.  Further, First Colonial as agent of Northbrook, will not be affected by the declaration, nor does it have a material interest as to the disputed coverage under the insurance contract to which it is not contractually privy.

### 2.   First Colonial As Manager

Three of the placement slips attached to the complaint were signed by the president of First Colonial "as Manager for" Northbrook.  (Doc. 2 at 8-10.)  There is no dispute that Northbrook was bound by the acts of its manager, First Colonial.  <u>See</u> <u>Dade County Dairies, Inc. v. Projected Planning Co.</u>, 158 So.2d 565, 566-67 (Fla. 3d

---

[7]     Though plaintiffs alleged in their complaint that "[b]oth Defendants are member companies of the Allstate Insurance Group of companies ("Allstate")," and that "Allstate, on behalf of Defendants" announced it had entered into reinsurance agreements with FAIRR and FASC to reinsure the MBPI vehcile service contract program, (Doc. 2 at 2, 4 (Complaint ¶¶ 8, 16), plaintiffs have not pleaded facts which, taken as true for purposes of a fraudulent joinder analysis, nor have they adduced any evidence on this record, to  warrant "piercing the corporate veil" to impose liability upon First Colonial.  <u>See</u> <u>Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.</u>, 99 F.3d 746, 752-53 (5th Cir. 1996).

DCA 1964).  Under Florida law,

> "The term 'manager,' applied to an officer or representative of a corporation, implies the idea that the management of the affairs of the company has been committed to him with respect to the property and business under his charge. Consequently his acts in and about the corporation's business, so committed to him, (are) within the scope of his authority. . . . The designation 'manager' implies general power, and permits a reasonable inference that he was invested with the general conduct and control of the defendant's business . . . and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company."

Amer. Lease Plans, Inc. v. Silver Sand Co. Of Leesburg, Inc., 637 F.2d 311, 314 (5th Cir. 1981)(quoting Dade County Dairies, Inc., 158 So.2d at 566-67 (quoting S.H. Kress & Co. v. Powell, 180 So. 757, 760 (Fla. 1938)).[8]  See also Edward J. Gerrits, Inc. v. McKinney, 410 So.2d 542, 545 (Fla. 1st DCA 1982).

The allegations of the complaint, as well as defendants' answer, establish that Northbrook and First Colonial are separate corporations.  Plaintiffs make no allegation that First Colonial in any way "controls" Northbrook or that First Colonial is an "alter ego" of Northbrook.  Rather, plaintiffs argue only that "First Colonial's role in the issuance of the placement slips is unclear at best" and states that it is not privy to "the true nature of the relationship between these two corporations which are of the same

---

[8]  In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

corporate group." (Doc. 14 at 8.)  The allegations of the complaint and attached placement slips state that First Colonial was acting as either an "agent of" or "manager for" Northbrook and no more.  Neither position makes First Colonial a party to the contract that plaintiffs seek to have construed by declaration.   Plaintiffs make no allegations nor present any evidence of any abuse of the corporate entity by either company which would make them alter egos, or any agreement between the defendant corporations, only speculating that perhaps "an express agreement exists between Defendants which may impose liability on defendant First Colonial" or that First Colonial may not have acted within the scope if its agency relationship. (Id. at 9.)  "'Common ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability.'" Weiss Capital Management, Inc. v. Crowder, 964 So.2d 865, 866 (Fla. 4th DCA 2007)(citation omitted); see generally Legg, 428 F.3d at 1325 n.5 ("[t]he potential for legal liability 'must be reasonable, not merely theoretical'")(citation omitted).

On this record,[9] there is no possibility that plaintiffs can establish a claim for declaratory action against First Colonial as First Colonial has no interest which would

_____

[9]   In its motion to remand,  plaintiffs requested leave to conduct limited jurisdictional discovery (Doc. 14 at 9-10), which the Court on October 3, 2007, granted.  (Doc. 25 at 2.)  Despite the more than six months that has passed since the Court's Order (and over a month since the parties announced the end of their settlement discussions), neither party has submitted any affidavits or depositions relating to the Court's jurisdiction in support of or opposition to the motion to remand.

be affected by a declaration of rights under the attached placement slips.  First Colonial is improperly joined as a defendant in this case and its citizenship is disregarded, resulting in complete diversity.  Thus, the proper parties are in complete diversity and there is no dispute that the jurisdictional amount is satisfied; plaintiffs' motion for remand must be denied and the Court retains this action by way of diversity jurisdiction.  See Marion v. Gen. Amer. Life Ins. Co., No. 2:06-cv-219-FtM-29SPC, 2006 WL 3544819 (M.D. Fla. Dec. 8, 2006)(denying plaintiff's motion to remand, and dismissing non-diverse defendant insurance agent as being fraudulently joined).

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1.     Plaintiffs' Motion To Remand (Doc. 14) is **DENIED**.

2.     The Complaint For Declaratory Judgment is **DISMISSED WITHOUT PREJUDICE** against defendant First Colonial Insurance Company.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of March, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record

15